No. 16-5202

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

UNITED STATES HOUSE OF REPRESENTATIVES,

*Plaintiff-Appellee*,

v.

THOMAS E. PRICE, M.D., in his official capacity as Secretary of Health and Human Services; U.S. Department of Health and Human Services; STEVEN T. MNUCHIN, in his official capacity as Secretary of the Treasury; U.S. Department of the Treasury,

*Defendants-Appellants.*

_____

On Appeal from the United States District Court
for the District of Columbia, No. 1:14-cv-01967
Honorable Rosemary M. Collyer

_____

## REPLY IN SUPPORT OF MOTION TO LIFT ABEYANCE
## TO CONSIDER STATES' MOTION TO INTERVENE

_____

ERIC T. SCHNEIDERMAN
*Attorney General of New York*
BARBARA D. UNDERWOOD
*Solicitor General*
STEVEN C. WU
*Deputy Solicitor General*
HOWARD MASTER
*Senior Enforcement Counsel*
LISA LANDAU
*Bureau Chief, Health Care Bureau*

XAVIER BECERRA
*Attorney General of California*
EDWARD C. DUMONT
*Solicitor General*
JONATHAN L. WOLFF
*Acting Chief Assistant Attorney General*
JULIE WENG-GUTIERREZ
*Senior Assistant Attorney General*
KATHLEEN BOERGERS
*Deputy Solicitor General*
GREGORY BROWN
*Deputy Attorney General*
SAMUEL P. SIEGEL
*Associate Deputy Solicitor General*

120 Broadway, 25th Floor
New York, NY 10271
(212) 416-6312
Barbara.Underwood@ag.ny.gov

455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 703-2540
Edward.DuMont@doj.ca.gov

June 2, 2017

The States of California, New York, Connecticut, Delaware, Hawaii, Illinois, Iowa, Kentucky, Maryland, Massachusetts, Minnesota, New Mexico, Pennsylvania, Vermont, and Washington and the District of Columbia have moved to intervene in this appeal to protect their own interests and those of millions of their residents.  The existing federal parties respond in the first instance by asking this Court to exempt them from filing any response to that motion on its merits, arguing instead that this Court should not even lift its present abeyance order to the limited extent necessary to complete briefing on the motion to intervene.

There is no sound basis for refusing to give the States' motion full consideration.  As the Executive Branch notes (Resp. 2), this Court previously considered and denied an intervention motion filed by two individuals shortly after the last election—before President Trump had taken office, let alone stated that he believes that cost-sharing reduction (CSR) payments are unlawful absent specific appropriations from Congress.  Even at that earlier point, however, this Court directed the parties to respond to the motion to intervene.  ECF No. 1653280 (Dec. 29, 2016).  It should do the same here.

Many of the arguments raised by the parties are premature, and should be considered by the Court only after full briefing on the States' intervention motion.  In any event, none of the parties' assertions support their efforts to avoid filing responses on the merits.

1

The Executive Branch argues briefly that the States' motion to intervene is premised on an "assumption" that the existing parties are ready to allow the district court's injunction to stand, whereas the parties' recent status report indicates that they "continue to discuss measures that would obviate the need for judicial determination of this appeal, including potential legislative action." Exec. Br. Resp. 1-2. But the States' motion is based on a fact: The current Administration has now plainly demonstrated that it no longer represents the interests of the movant States or their residents in this litigation, let alone in any related "discuss[ions]" with the House. *See* Mot. to Intervene 6-7. The President and the Attorney General have stated that they believe that the CSR payments at issue in this appeal are unlawful in the absence of specific appropriations, and the President has threatened to reverse the Administration's position in this case on several occasions. *Id*. Moreover, the Executive Branch's response conspicuously fails to make any commitment to the legal position it previously took in this proceeding: that the CSR payments at issue here are both authorized and mandatory.[1] Meanwhile, the practical uncertainty caused by the President's and the Attorney General's statements, together with the lack of any progress toward legal

---

[1] Indeed, the House's representation that the federal parties may reach a *non-legislative* "negotiated resolution that would moot this appeal entirely" (House Resp. 3) strongly suggests the parties' alignment in opposition to these payments.

2

resolution of this appeal, has begun to cause very real harm to the markets created by the Affordable Care Act, to the millions of people who depend on the Act, and to the States. *See id*. at 9-23.

The House's arguments against being directed to respond to the States' motion are no more persuasive. In particular, the House is wrong in arguing that "the States will not be prejudiced by deferring consideration of their motion to intervene during the abeyance period." House Resp. 2; *see id*. at 4. As the States have explained (Mot. to Intervene 9-23), insurers are already raising premiums, or withdrawing entirely from ACA Exchanges, because they do not know whether CSR payments will be made for the 2018 plan year. In Delaware, Aetna has stated that it will withdraw from the Exchange in 2018, and has represented to the Delaware Department of Insurance that its decision was based in part on the uncertainty over CSR payments. Mot. to Intervene 14, *citing* Navarro Declaration ¶ 14. In Iowa, Aetna and Wellmark have both announced their intention to withdraw from the Exchange in 2018, with Wellmark CEO John Forsyth explaining that his company's decision was driven by "rising costs" on the Exchanges and a lack of clarity about the "timing and relative impact" of possible solutions that might stabilize the insurance markets. Wellmark, *Wellmark*

3

*Announces 2018 Individual ACA Market Decision in Iowa*, Apr. 3, 2017.[2]  And in North Carolina, Blue Cross and Blue Shield has proposed a 22.9% rate increase for plans it intends to offer through the Exchange in 2018—with 61% of that increase being driven by the company's assumption that CSRs will not be paid during 2018. Tajlili, *Premiums to Rise in 2018 for Affordable Care Act Plans*, May 25, 2017.[3] Some States will also soon begin incurring additional administrative costs to review two sets of rate proposals—one assuming that CSRs will be paid and the other that they will not.  Mot. to Intervene 19-21.  These harms will only become more acute in the coming months, as insurers approach deadlines for filing proposed premium rates and deciding whether to participate in the Exchanges in 2018, and as the States' time to review and evaluate proposed premium rates grows shorter.

    The House argues that these harms would not be alleviated by granting the motion to intervene, but only by "a final resolution of the dispute between the parties, and perhaps not even then."  House Resp. 4 n.4.  But the harms of

---

[2] https://www.wellmark.com/about/newsroom/2017/04/03/2018-aca-market-decision; *see also* Abelson, *Iowa's Largest Insurer Says It Will Withdraw from Obamacare Exchanges*, N.Y. Times, Apr. 3, 2017, https://www.nytimes.com/2017/04/03/health/iowa-healthcare-wellmark-blue-cross-blue-shield-obamacare.html?_r=0.

[3] http://blog.bcbsnc.com/2017/05/premiums-rise-2018-affordable-care-act-plans/.

4

uncertainty are being caused in part by the fact that no current party to this appeal firmly supports the Executive Branch's authority and mandate to make CSR payments, and no progress is being made toward a legal resolution of any sort. So long as the district court's decisions on standing and the merits remain unreviewed, and its injunction outstanding although stayed, the resulting uncertainty favors the strategic interests of those who would like to cause systemic failures in state insurance markets under the ACA. Having no party in this appeal whose interest is in *defending* the proper operation of the ACA, and of those markets, is thus a real and immediate problem.

Contrary to the House's arguments, the Administration would not retain its present ability to threaten to stop making CSR reimbursements "at any time … regardless of the status or outcome of this appeal." House Resp. 4; *see also id*. at 5. At least one potential outcome of this appeal—sustaining the House's standing, but reversing the judgment below on the merits—would establish both the existence of a permanent appropriation for CSR payments and the corresponding legal duty of the Executive Branch defendants to make those payments under the ACA. A decision rejecting the House's standing would not establish the legal duty to pay, but it would remove any putative justification for not doing so based on the district court's merits opinion and injunction. And any decision in this appeal after the States' intervention would be based on an appropriate judicial determination,

5

after a robust adversary presentation, of what is permitted or required by *existing law*—not on mere speculation by the current federal parties concerning the possibility of future superseding legislation, or of a "negotiated resolution" (House Resp. 3) designed to serve the political and strategic goals of the House and the Administration.[4]

To be sure, the Administration could unilaterally decide to change the legal position of the Executive Branch, stop defending this litigation, and stop making CSR payments *without* any judicial resolution of this appeal. That possibility, however, only highlights why the States seek to intervene. If the Administration were to stop temporizing and abandon this appeal, only intervenors such as the States would have an interest in asking this Court to vacate the district court's decision. *See, e.g.*, *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 29 (1994) (holding that vacatur based on "settlement" is appropriate only in "exceptional circumstances"). Such a remedy would be important not only because of the grave doubts about the district court's jurisdiction to entertain this

---

[4] The one legislative proposal currently being considered—the American Health Care Act of 2017, H.R. 1628, 115th Cong.—has yet to be acted on by the Senate. *See, e.g.*, Hughes, *Republican Senator Says Deal on Health Care Unlikely this Year*, Wall St. J., June 2, 2017, https://blogs.wsj.com/washwire/2017/06/02/republican-senator-says-deal-on-health-care-unlikely-this-year/. Even if finally enacted in some form, the current version would not repeal CSR payments until 2020. H.R. 1628 § 131(b); *see* Mot. to Intervene 7-8.

action by the House, but also because it would remove any basis for the Administration to rely on the district court's decisions here to resist a challenge (in these or other proceedings) by the States or other parties to any new position that the Executive Branch might adopt. *Cf. Feller v. Brock*, 802 F.2d 722, 727 (4th Cir. 1986) (district court in West Virginia abused its discretion by issuing preliminary injunction that conflicted with injunction previously entered by district court for the District of Columbia).

The movant States are being presently harmed by the new Administration's demonstrated unwillingness to continue any vigorous defense of the proper implementation of the ACA, including in this appeal. The continued pendency of this litigation itself contributes to the legal uncertainty and the resulting harm—especially while the present appeal remains in indefinite abeyance, at the behest of federal parties who now appear more aligned than adverse. Those parties are free to oppose intervention, but they should do so on the merits. This Court should lift its abeyance order to the extent necessary to require the existing parties to respond.

# CONCLUSION

The Court should direct the existing parties to respond to the States' motion to intervene.

Dated: June 2, 2017                                     Respectfully submitted,

| | |
|---|---|
| ERIC T. SCHNEIDERMAN<br>*Attorney General of New York*<br>BARBARA D. UNDERWOOD<br>*Solicitor General*<br>STEVEN C. WU<br>*Deputy Solicitor General*<br>HOWARD MASTER<br>*Senior Enforcement Counsel*<br>LISA LANDAU<br>*Bureau Chief, Health Care Bureau* | XAVIER BECERRA<br>*Attorney General of California*<br><br>*/s/ Edward C. DuMont*<br>EDWARD C. DUMONT<br>*Solicitor General*<br>JONATHAN L. WOLFF<br>*Acting Chief Assistant Attorney General*<br>JULIE WENG-GUTIERREZ<br>*Senior Assistant Attorney General*<br>KATHLEEN BOERGERS<br>*Deputy Solicitor General*<br>GREGORY BROWN<br>*Deputy Attorney General*<br>SAMUEL P. SIEGEL<br>*Associate Deputy Solicitor General* |
| 120 Broadway, 25th Floor<br>New York, NY 10271<br>(212) 416-6312<br>Barbara.Underwood@ag.ny.gov | 455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102<br>(415) 703-2540<br>Edward.DuMont@doj.ca.gov |

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 27(d)(2), because it contains 1,618 words, according to the count of Microsoft Word. I further certify that this brief complies with typeface requirements of Rule 27(d)(1)(E) because it has been prepared in 14-point Times New Roman font.

June 2, 2017              */s/ Edward C. DuMont*
                          Edward C. DuMont

## CERTIFICATE OF SERVICE

I certify that on June 2, 2017, the foregoing Reply in Support of Motion to Lift Abeyance to Consider States' Motion to Intervene was served electronically via the Court's CM/ECF system upon all counsel of record.

June 2, 2017            */s/ Edward C. DuMont*
                        Edward C. DuMont